UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| **KIYWON BONNER** | **CIVIL ACTION NO. 23-0872** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE TERRY A. DOUGHTY** |
| **LUKE MITCHELL, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

### REPORT AND RECOMMENDATION

Plaintiff Kiywon Bonner, a prisoner at Red River Parish Jail proceeding pro se and in forma pauperis, filed this proceeding on approximately June 28, 2023, under 42 U.S.C. § 1983. He names the following Defendants: Judge Luke Mitchell, Magistrate Judge James Boddie, and Doctor Wyane T. Coleman.[1] For reasons that follow, the Court should dismiss Plaintiff's claims.

### Background

Plaintiff states that on October 10, 2022, he left Red River Parish Courthouse to return his mother's truck. [doc. # 1, p. 3]. He maintains that he had been released on bond and that he was "never taken into custody" by any officer. *Id.* He alleges, however, that when he returned to the state court on his court date, he was arrested and charged with escape. *Id.*

Plaintiff suggests that Judge Boddie and Judge Mitchell (hereafter, "the judges") revoked his bond without first conducting a "proper hearing" and "making the necessary findings required under 907.041[.]" [doc. # 7, pp. 4, 6]. He suggests further that the judges revoked his bond associated with several criminal charges because he arrived late to an unrelated child

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

support hearing.  *Id.* at 4, 6.

Plaintiff appears to claim that the judges have a conflict of interest because they were involved in his brother's criminal proceeding.  *Id.* at 5.

Plaintiff states that on March 28, 2023, at Red River Parish Jail, he "started losing strength in [his] left side and [] was having very bad chest pain[.]"  [doc. # 1, p. 5].  His brother "went to get a correctional officer[,]" but no one responded.  *Id.* at 5-6.  His brother then called their mother, who in turn spoke with "dispatch."  *Id.* at 6.  Dispatch informed his mother that he was "ok" but was "sitting in the day room in pain" with 190/80 blood pressure.  *Id.*  Plaintiff's mother called an ambulance, which arrived about two hours later.  *Id.*  The ambulance did not transport Plaintiff to a physician because a correctional officer told the ambulance driver that officers would transport Plaintiff in a police cruiser.  *Id.*  "While in the police cruiser, [Plaintiff] went into cardiac arrest . . . ."  *Id.*  When he arrived at Christus Coushatta Hospital, a nurse told him that he had a "light heart attack" and that he would have had a major heart attack if he had arrived ten minutes later.  [doc. #s 1, pp. 6-7; 7, p. 1].

At the hospital, Plaintiff received "all kinds of pills" and a "shot from Dr. Coleman which took about five minutes."  [doc. #s 1, p. 7; 7, p. 1; 7-2, p. 10].  Plaintiff claims, however, that Dr. Coleman did not properly diagnose his medical condition.  [doc. # 7, p. 1].

"They sent [him] back [to the jail] feeling bad."  [doc. # 1, p. 7].  He arrived back at the jail at most five minutes after Dr. Coleman gave him a shot.  [doc. # 1, p. 7].

"The following day, [Plaintiff] was having the same problem again."  [doc. # 7, p. 1].  En route to the hospital, he "went into cardiac arrest[.]"  *Id.* at 2.  When he arrived, a nurse told him that he had fluid around his heart.  "They gave [him] all kinds of pills and sent [him] back to the jail."  *Id.*  Plaintiff claims that what he received "was not proper attention" because he did not

receive any tests. *Id.* at 2-3.

Plaintiff has asked "the warden several times to make [him] an appointment at LSU where they can run tests on [him] and see why [he] is having heart problems." [doc. # 1, p. 7]. He has an appointment in September 2023. [doc. # 7, p. 3]. He alleges, however, that "they haven't taken [him] to get test[s] . . . ." *Id.* He surmises, "I feel that they had given me the wrong medicine is the reason I feel that behind these light heart attacks. [sic]." *Id.* at 3. He "feel[s] [he] needs to see a heart specialist . . . ." *Id.*

Plaintiff seeks $1,500,000.00, and he asks the Court to revoke defendants' professional licenses. [doc. # 1, p. 4].

## Law and Analysis

**1. Preliminary Screening**

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[2] *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact."

---

[2] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

*Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

In making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra.* A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id.* "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148,

4

152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Judicial Immunity**

As above, Plaintiff suggests that Judge Boddie and Judge Mitchell revoked his bond without first conducting a "proper hearing" and "making the necessary findings required under 907.041[.]" [doc. # 7, pp. 4, 6]. He suggests that the judges revoked his bond associated with several criminal charges because he arrived late to an unrelated child support hearing. *Id.* at 4, 6. Plaintiff also appears to claim that the judges have a conflict of interest because they were involved in his brother's criminal proceeding. *Id.* at 5.

"Judicial immunity is an immunity from suit and not just from the ultimate assessment of damages." *Ballard v. Wall*, 413 F.3d 510, 515 (5th Cir. 2005). It "applies even when the judge is accused of acting maliciously and corruptly . . . ." *Pierson v. Ray*, 386 U.S. 547, 554 (1967).

5

It "extends to all judicial acts which are not performed in the clear absence of all jurisdiction." *Kemp ex rel. Kemp v. Perkins*, 324 Fed. App'x. 409, 411 (5th Cir. 2009) (*citing Adams v. McIlhany*, 764 F.2d 294, 297 (5th Cir. 1985)). There are only two exceptions: (1) non-judicial actions, i.e., actions not taken in the judge's judicial capacity; and (2) lawsuits challenging actions taken in the complete absence of all jurisdiction. *Mireles v. Waco*, 502 U.S. 9, 11 (1991).

"In determining whether an action is judicial, a court looks to the nature of the act itself; that is, whether the challenged act is a function normally performed by a judge." *Id.* Courts consider four factors: (1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity. *Ballard*, 413 F.3d at 515. "These factors are broadly construed in favor of immunity." *Id.* "Immunity may be applied even if one or more of these factors is not met." *Morrison v. Walker*, 704 F. App'x 369, 373 (5th Cir. 2017).

"Immunity is not affected by the alleged magnitude of the judge's errors or the mendacity of his acts." *Stokes v. Ward*, 132 F.3d 1455 (5th Cir. 1997); *Mitchell v. McBryde*, 944 F.2d 229, 230 (5th Cir. 1991) ("The judge is absolutely immune for all judicial acts not performed in clear absence of all jurisdiction, however erroneous the act and however evil the motive.").

Here, revoking bond[3] and deciding whether to recuse in the presence of a conflict of

---

[3] *See Walker v. Mississippi*, 2021 WL 4618467, at *2 (5th Cir. Oct. 6, 2021) (finding a judge immune where the plaintiff alleged that "bond was improperly revoked," that bond conditions were too restrictive, and that "reinstatement of bond was improperly denied[.]"); *Barnes v. Madison*, 79 F. App'x 691, 701 (5th Cir. 2003) (finding that absolute immunity cloaked a judge who set the plaintiff's bond; *Herring v. Mayfield*, 51 F.3d 1043, 1995 WL 153026, at *1 (5th Cir. 1995) ("[S]etting the amount of the bond . . . is within the scope of [the judge's] jurisdiction, thus affording her absolute judicial immunity.").

interest[4] are acts normally performed by a judge.[5] Moreover, Plaintiff does not allege that the judges acted outside of their courtrooms or chambers. Likewise, Plaintiff's claims clearly "center around" proceedings before the judges, and nothing indicates that the alleged acts arose outside of a visit to the judges in their official capacities.[6] Nor does Plaintiff allege that either judge acted in the absence of all jurisdiction. *See* LA. CONST. ART. V, § 16 ("[A] district court shall have original jurisdiction of all civil and criminal matters.").

Accordingly, Judges Boddie and Mitchell are entitled to absolute judicial immunity with respect to Plaintiff's request for compensation.[7]

---

[4] *See Kemp ex rel. Kemp v. Perkins*, 324 F. App'x 409, 412 (5th Cir. 2009) ("Recusal, appointment of a special judge for a pending case, and the detention of a criminal defendant are not the types of administrative or ministerial conduct for which judicial immunity is unavailable."); *Price v. Porter*, 351 F. App'x 925, 926 (5th Cir. 2009) (finding a judge immune where the plaintiff alleged that the judge should have recused); *Hinkle v. Johnston*, 263 F.3d 163 (5th Cir. 2001) (finding judges immune where the plaintiff alleged that the judges were biased and should have recused); *Lewis v. City of Waxahachie*, 465 F. App'x 383, 384 (5th Cir. 2012); *Amrhein v. United States*, 740 F. App'x 65, 67 (5th Cir. 2018).

[5] In addition, with respect to Plaintiff's claim that the judges had a conflict of interest, "judicial immunity is not overcome by allegations of bad faith or malice[.]" *Mireles v. Waco*, 502 U.S. 9, 11 (1991); *see Walker*, 2021 WL 4618467, at *2 (finding a judge immune where the plaintiff claimed that the judge "was unfairly biased.").

[6] *See Morrison*, 704 F. App'x at 374 (finding judicial immunity even where the plaintiff failed to offer any allegations relating to three of the four *Ballard* factors); *Avdeef v. Royal Bank of Scotland, P.L.C.*, 616 F. App'x 665, 674 (5th Cir. 2015) ("Avdeef makes no effort to argue that Judge Chupp's actions were 'nonjudicial' in nature or were taken 'in the complete absence of all jurisdiction,' as required to overcome judicial immunity.").

[7] "[J]udges are not entitled to absolute immunity from suit for injunctive or declaratory relief." *Laws. v. Hughes*, 616 F. App'x 200, 201 (5th Cir. 2015). Below, the undersigned addresses Plaintiff's remaining request for relief.

7

**3. Injunctive Relief**

Plaintiff seeks injunctive relief against state court judges under Section 1983, asking this Court to revoke the judges' licenses.[8] [doc. # 1, p. 4].

Section 1983 states: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, <u>except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable</u>." 42 U.S.C. § 1983 (emphasis added).

"Available relief against any defendant judge is limited by a 1996 amendment to Section 1983 'that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.'" *Daves v. Dallas Cnty., Texas*, 22 F.4th 522, 545 (5th Cir. 2022).

Here, Plaintiff does not contend that Judges Boddie and Mitchell acted outside of their judicial capacities. Nor does Plaintiff contend that a 'declaratory decree was violated' or that 'declaratory relief was unavailable.' Accordingly, 'injunctive relief shall not be granted,' under Section 1983. *See Machetta v. Moren*, 726 F. App'x 219, 220 (5th Cir. 2018) (holding, where a

---

[8] *See* BLACK'S LAW DICTIONARY (11th ed. 2019) ("Injunction") ("A court order commanding or preventing an action."); *Garland v. Aleman Gonzalez*, 2022 WL 2111346, at *4 (U.S. June 13, 2022) (defining an injunction as a "a judicial order that 'tells someone what to do or not to do.'").

8

plaintiff was unsatisfied with the outcome of a child custody proceeding in state court, that Section 1983 did "not provide a basis for" the plaintiff "to seek injunctive relief" because the plaintiff did not allege that a declaratory decree was violated or that declaratory relief was unavailable); *see also James v. Tobolowski*, 517 F. App'x 285, 286 (5th Cir. 2013).

As Plaintiff does not seek any other cognizable relief against the judges, the Court should dismiss his claims against the judges.[9]

**4. Medical Care**

To plead a constitutional violation, a plaintiff "must demonstrate that a government official was deliberately indifferent to 'a substantial risk of serious medical harm.'" *Bailey v. E. Baton Rouge Par. Prison*, 663 F. App'x 328, 330 (5th Cir. 2016) (*quoting Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)). A prison official acts with deliberate indifference to an inmate's health "only if he knows that [the] inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *see Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994) (applying *Farmer* to a denial of medical care claim). A plaintiff must establish that a prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in

---

[9] To the extent Plaintiff asks the Court to order the state entity with the authority to revoke the judges' licenses to perform its duty, Plaintiff does not name the entity as a defendant. Moreover, this ostensible request sounds in mandamus as Plaintiff essentially asks the Court to, by writ, compel the non-federal entity to perform its duty. In this respect, the Court lacks jurisdiction. *See* 28 U.S.C. § 1361 (emphasis added) ("The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee *of the United States* or any agency thereof to perform a duty owed to the plaintiff."); *Samuels v. Emanuel*, 2014 WL 50851, at *2 (W.D. La. Jan. 7, 2014) (reasoning, where the plaintiff asked "that the defendants be relieved from their duties[,]" that "federal district court lacks jurisdiction to review actions in the nature of mandamus, seeking to compel state officials to perform duties allegedly owed the plaintiff, as for example in this case . . . .").

any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

"[N]either an incorrect diagnosis nor the failure to alleviate a significant risk that should have been perceived, but was not, is sufficient to establish deliberate indifference." *Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016). "Unsuccessful treatment, medical malpractice, and acts of negligence do not constitute deliberate indifference; nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. Moreover, a delay in treatment is not unconstitutional, unless there has been deliberate indifference that results in substantial harm. In short, [d]eliberate indifference is an extremely high standard to meet." *Id.* (internal quotation marks and quoted sources omitted); *see Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference."); *Frazier v. Keith*, 707 F. App'x 823, 824 (5th Cir. 2018) ("The choice between forms of treatment is a classic example of a matter of professional judgment and does not support a finding of deliberate indifference.").

### A. Dr. Coleman

Plaintiff pleads potential negligence or malpractice at best, simply disagreeing with the care Dr. Coleman provided. As above, Coleman gave Plaintiff a shot and provided "all kinds of pills." [doc. #s 1, p. 7; 7, p. 1; 7-2, p. 10]. Further, Plaintiff attaches medical records showing that he received even more medical care from Coleman and others, including evaluations, examinations, diagnostic tests, laboratory tests, diagnoses, and prescriptions. [doc. # 7-3].

Plaintiff's disagreement or dissatisfaction with the care he received falls short of establishing deliberate indifference and does not, consequently, state a plausible claim. *See Petzold v. Rostollan*, 946 F.3d 242, 250 (5th Cir. 2019) ("[B]ecause medical treatment was

10

provided, even if it was . . . based on a perfunctory and inadequate evaluation, it was not denied."); *Frazier v. Keith*, 707 F. App'x 823, 824 (5th Cir. 2018) (finding no deliberate indifference where medical staff responded to the plaintiff's complaints and provided consistent care and medication, even though the plaintiff disagreed with the extent and form of treatment); *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992) (finding that an inmate received adequate care, even though the treatment may not have been the best, and that any deficiencies in treatment were minimal; moreover, the plaintiff's continuing pain, in and of itself, did not demonstrate that a constitutional violation occurred).[10]

To the extent Plaintiff pleads negligence or malpractice, "mere negligence will not suffice to support a claim of deliberate indifference." *Mathis v. Alexander*, 49 F.3d 728 (5th Cir. 1995). If Plaintiff intends to pursue a negligence/malpractice claim, he should do so in state court. *See Estelle v. Gamble*, 429 U.S. 97, 107 (1976) ("A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court . . . .").

**B. Conclusory Claims**

Plaintiff has asked "the warden several times to make [him] an appointment at LSU where they can run tests on [him] and see why [he] is having heart problems." [doc. # 1, p. 7].

---

[10] *See also Vessell v. Myles*, 781 F. App'x 355 (5th Cir. 2019) ("While Vessell argues that he continued to experience pain and swelling, Myles's unsuccessful treatment and Vessell's disagreement with the treatment are insufficient to demonstrate deliberate indifference."); *Adams v. Fuller*, 2022 WL 17250191, at *1 (5th Cir. Nov. 28, 2022) ("[T]he medical records are replete with notes of sick calls, examinations, and diagnoses related to his ear, which further rebut his allegations of deliberate indifference."); *Gibson v. Collier*, 920 F.3d 212, 220 (5th Cir. 2019) ("There is no . . . claim just because an inmate believes that medical personnel should have attempted different diagnostic measures or alternative methods of treatment."); *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) ("Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.").

He has an appointment in September 2023. [doc. # 7, p. 3]. He alleges, however, that as of August 2023, "they haven't taken [him] to get test[s] . . . ." *Id.* He surmises, "I feel that they had given me the wrong medicine is the reason I feel that behind these light heart attacks. [sic]." *Id.* at 3. He "feel[s] [he] needs to see a heart specialist . . . ." *Id.*

Plaintiff, however, does not identify who "they" are or otherwise name or identify a responsible defendant.[11] Moreover, Plaintiff does not sufficiently identify "any particular defendant's personal involvement in conduct that caused constitutional deprivation." *See Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 421 (5th Cir. 2017) (dismissing a claim that supervisory officials failed to correctly house the plaintiff because despite the magistrate judge's instruction to "state what each defendant did[,]" the plaintiff did not identify a responsible defendant). The Court disregards bare assertions of collective responsibility unsupported by concrete factual allegations. *See Martinez v. City of N. Richland Hills*, 846 F. App'x 238, 243 (5th Cir. 2021); *Jones v. Hosemann*, 812 F. App'x 235, 238-39 (5th Cir. 2020) ("It is not enough for a plaintiff to simply allege that something unconstitutional happened to him. The plaintiff must plead that each defendant individually engaged in actions that caused the unconstitutional harm.").

The Court should dismiss Plaintiff's claims of lack of medical care.

## Recommendation

For the reasons above, **IT IS RECOMMENDED** that Plaintiff Kiywon Bonner's claims be **DISMISSED** as frivolous, for failing to state claims on which relief may be granted, and for

---

[11] The undersigned instructed Plaintiff to provide a separate description of what, exactly, each defendant did to violate his rights and, with respect to his claims of lack of medical care, "identify a responsible defendant(s)." [doc. # 5, pp. 2-3].

seeking monetary relief from defendants immune from such relief.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

In Chambers, Monroe, Louisiana, this 7th day of September, 2023.

_____
Kayla Dye McClusky
United States Magistrate Judge